IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | | |
| PAUL P. LAUVER, | : | Bankruptcy No. 05-35884 BM |
| | : | Adversary No. 06-2562 BM |
| Debtor | : | Chapter 7 |
| | : | |
| DARLA M. LAUVER, | : | Bankruptcy N0. 05-37622 BM |
| | : | Adversary No. 06-2563 BM |
| Debtor | : | Chapter 7 |
| ****************************** | | |
| ACCREDITED HOME LENDERS, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Complaints To Determine The |
| | : | Validity, Priority And Extent Of |
| PAUL P. LAUVER, DARLA M. LAUVER, | : | A Mortgage Lien |
| JAMES R. WALSH, ESQ., TRUSTEE and | : | |
| ROBERT SHEARER, ESQ., TRUSTEE, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM OPINION

Accredited Home Lenders, Inc. seeks to have stricken from the record a mortgage satisfaction piece indicating that a mortgage debtors Paul and Darla Lauver granted it in 2004 was satisfied. It also seeks to have the mortgage reinstated on the record.

The chapter 7 trustees in these cases maintain that because a prospective purchaser of the property subject to the "satisfied mortgage" would qualify as a bona fide purchaser under Pennsylvania law, they are able to avoid the mortgage in accordance with § 544(a)(3) of the Bankruptcy Code.

Judgment will be entered in favor of Accredited and against the trustees for reasons set forth in this memorandum opinion.

## – FACTS –

Debtors are (or were) husband and wife. They are the owners of record of real property which serves as their personal residence.

Debtors executed a promissory note in the principal amount of $135,000 in favor of Accredited in March of 2002. As security for the note, they also granted Accredited a mortgage in the above real property in the amount of the note. The following notation appeared at the bottom of each page of the mortgage: 0202048841. This notation referred to the number Accredited had assigned to the loan. Accredited assigned the note and mortgage to Provident Consumer Financial Services ("PCFS") that same day. For reasons unknown, neither the mortgage nor the assignment thereof was ever recorded.

Debtor Paul Lauver thereafter executed an adjustable rate note in favor of Accredited in the amount of $132,000 on September 24, 2004. There is no indication that debtor Darla Lauver also executed the note. The loan proceeds apparently were used to satisfy the 2002 mortgage. The following notation appeared on each page of the note: Loan # 0409171136.

As security for this loan, both debtors granted Accredited a first mortgage in the above property in the amount of $132,000. The number appearing on each page of the mortgage was identical to the loan number appearing on the promissory note. The mortgage was recorded on October 4, 2004, in the office of the recorder of deeds for the

county in which the property is located. In contrast to the 2002 mortgage, Accredited did not assign the note and mortgage to a third party.[1]

Acting as agent for PCFS, the assignee of the initial mortgage, Nationwide Title Insurance, Inc. (NTI) prepared and recorded a mortgage satisfaction piece, less than five months after the 2004 mortgage was recorded, on February 18, 2005. Instead of referring to the unrecorded 2002 mortgage which Accredited had assigned to PCFS, the mortgage satisfaction piece referred to the 2004 mortgage with which PCFS had no involvement.

The mortgage satisfaction piece erroneously identified the date of the satisfied mortgage as September 24, 2004, and erroneously identified PCFS, not Accredited, as the mortgagee. It also erroneously stated that the satisfied mortgage was recorded in the book in which the 2004 mortgage was recorded. In addition, the loan number referred to in the mortgage satisfaction piece was 0202048841, the number appearing at the bottom of the 2002 mortgage. Finally, the mortgage satisfaction piece stated that the amount of the satisfied mortgage was $135,000, the amount of the 2002 mortgage.

Accredited did not authorize NTI to prepare and file the mortgage satisfaction piece and did not learn of its filing until May of 2006, some fifteen months after it was recorded and some seven months after debtors filed their respective bankruptcy petitions.

---

[1] On September 24, 2004, debtors also granted Accredited a second mortgage in the property in the amount of $33,000. Accredited assigned this mortgage that same day to a third party, which recorded the mortgage and the assignment thereof on October 1, 2004. This second mortgage, about which little is known, is not at issue in these adversary actions.

Debtor Paul Lauver filed a voluntary chapter 7 petition on October 12, 2005. Debtor Darla Lauver did not join in the petition, but instead filed a separate petition of her own on October 14, 2005. Different chapter 7 trustees were appointed in the respective cases.

In his statement of financial affairs, debtor Paul Lauver indicated that debtor Darla Lauver had commenced a divorce proceeding against him at some undisclosed time in 2005. The present status of the divorce proceeding is not known. His schedules, which were filed contemporaneously with the petition, listed the marital residence as an estate asset and identified Accredited as having a secured claim arising out of the 2004 mortgage.

The schedules accompanying debtor Darla Lauver's bankruptcy petition, which were filed some two weeks *after* her petition was filed, listed the marital residence as an estate asset and identified Accredited as having a secured claim arising out of the 2004 mortgage. In her statement of financial affairs, debtor Darla Lauver indicated that she had made a payment on the mortgage in August of 2004, some six months after the above mortgage satisfaction piece was recorded.

The bankruptcy trustees in these cases brought motions to retain a realtor to market debtor's real property and to locate a buyer. The motions were granted.

Realizing that it might receive nothing from debtors' estates from the 2004 mortgage if the property were sold, Accredited commenced these adversary actions against debtors, the successor to PCFS,[2] and the chapter 7 trustees. Among other things,

---

[2.] Accredited and Litton Loan Servicing, the successor to PCFS, have submitted a stipulation to settle all claims Accredited may have against Litton and to dismiss Litton as a party to these adversary actions.

Accredited seeks to have the above mortgage satisfaction piece stricken from the record and to have the 2004 mortgage reinstated.

The adversary actions have been tried and are now ready for decision.

## ANALYSIS

Mortgages ordinarily are designated as satisfied by mortgage satisfaction pieces. Upon receipt of payment in full of the mortgage and tender of all recording costs, a mortgagee is required to present for recording in the office of the recorder of deeds in the county in which the mortgage was recorded a duly executed and acknowledged mortgage satisfaction piece. 21 P.S. § 721-4. Once recorded, the mortgage satisfaction piece "shall forever thereafter discharge and release the lien and the debt of the mortgage". *Id.*

A recorded mortgage satisfaction piece is not, however, conclusive proof that the mortgage identified therein was in reality satisfied. It is merely prima facie evidence of its satisfaction and may be challenged. *St. Clement's Building & Loan Association v. McCann*, 126 Pa. Super. 20, 22, 190 A. 393, 394 (1937). "There is no magic in an entry of satisfaction...on...a mortgage, which can prevail against the truth and equity of the transaction". *Fleming v. Parry*, 24 Pa. 47, 1854WL13243 (1854). When appropriate, a court may use its equitable powers to strike an erroneous mortgage satisfaction piece. *St. Clement's Building & Loan Association*, 126 Pa. Super. at 22, 190 A. at 394.

The principle that an erroneous mortgage satisfaction piece may be stricken from the record is subject to qualification. It may be stricken and the mortgage reinstated only if rights of innocent third parties are not adversely affected. *First National Bank v.*

- 5 -

*Rockefeller*, 353 Pa. 553, 559, 5 A.2d 205, 208 (1939). A *bona fide purchaser* without notice would qualify as an innocent third party.

Debtors, it has been noted, filed separate bankruptcy petitions on different dates. Moreover, a different trustee was appointed in each case. Contemporaneously with the filing of his voluntary chapter 7 petition, debtor Paul Lauver also filed his schedules, statement of financial affairs and statement of intention with respect to certain debts on October 12, 2005. Debtor Darla Lauver filed only a "bare bones" voluntary chapter 7 petition on October 14, 2005, and did not file her schedules and statement of financial affairs until later. The last of her schedules was filed on October 28, 2005.

Debtor Paul Lauver identified Accredited In his schedules as having, as of the commencement of his bankruptcy case, a mortgage lien against the marital residence as a result of the 2004 mortgage in favor of Accredited. While his statement of financial of financial affairs is silent about the 2004 mortgage, he indicated elsewhere his intention to retain the property and to pay Accredited in full "pursuant to [the] original contract".

Debtor Darla Lauver also indicated in her schedules that, as of the commencement of her bankruptcy case, Accredited had a mortgage lien against the property as a result of the 2004 mortgage. In addition, she indicated in her statement of financial affairs that she had made a monthly payment on the mortgage in August of 2005, some six months *after* the mortgage satisfaction piece had been recorded.

Accredited asserts that this information clearly indicates that debtors believed when they filed their respective bankruptcy petitions that the 2004 mortgage was still in effect.

This assertion is unassailable. What remains to be determined is what bearing, if any, this has on the outcome of the present adversary actions Accredited has brought.

Accredited would have us conclude on the basis of this assertion that the above information would provide a hypothetical purchaser of debtors' property with notice at the time of the commencement of these bankruptcy cases that the 2004 mortgage in favor of Accredited was still in effect. From this, Accredited continues, it follows that such a purchaser would not qualify as a bone fide purchaser of the property within the meaning of § 544(a)(3) of the Bankruptcy Code and that the trustees cannot avoid the 2004 mortgage.

> Section 544(a) of the Bankruptcy Code provides in part as follows:
>
> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfers of property of the debtor that is voidable by --- ....
> > (3) A bone fide purchaser of real property ... against whom applicable law permits such transfer to be perfected, that obtains the status of a bone fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

The phrase "as of the commencement of the case" refers to the date on which the bankruptcy petition is filed. *Bridge v. Midatlantic National Bank*, 18 F.3d 195, 200 (3d Cir. 1994).

This provision empowers a bankruptcy trustee to avoid an obligation – in these cases the 2004 mortgage in favor of Accredited – if the obligation would not have bound

a bone fide purchaser at the time a debtor commences his or her bankruptcy case. *McLeon v. City of Philadelphia, Water Revenue Bureau*, 891 F.2d 474, 476 (3d Cir. 1989).

As a hypothetical bone fide purchaser for purposes of this provision, a bankruptcy trustee is deemed to have: (1) paid value for the property; (2) perfected his or her interest in the property as of the date on which the bankruptcy petition was filed; and (3) searched the title of the property as of the filing of the bankruptcy petition. *Bridge*, 18 F.3d at 204.

Congress recognized when enacting § 544(a)(3) that it would be impractical and onerous to require a trustee to have actually paid value for the property and to have actually taken all steps required to record an interest in property. Under this provision, a trustee is *deemed* to have done so. *Id.*, 18 F.3d at 204 n.7.

This "strong-arm" power is conferred on a bankruptcy trustee by federal law. The scope of this power, however, is governed by the substantive law of the state in which the property is located as of the filing of the bankruptcy petition. Rather than supplanting state law, the powers conferred on a trustee by § 544(a) are subject to the laws of the locus of the property. *Id.*, 18 F.3d at 200. The property at issue in these adversary actions is located in Pennsylvania.

Under Pennsylvania law, a purchaser of real property having no notice or knowledge of a prior interest in the property is protected against that interest. *Long John Silver's, Inc. v. Fiore*, 255 Pa. Super. 183, 190, 386 A.2d 569, 573 (1978). This principle is codified in the recording statute found at 21 Pa. C.S.A. § 351. Either actual or constructive notice

of the prior interest will disqualify one from becoming a bona fide purchaser. *Id.*, 255 Pa. Super. at 190-91, 386 A.2d at 573.

The trustees in these cases concede that the mortgage satisfaction piece was erroneous. Contrary to what it indicates, the 2004 mortgage had not been satisfied.

– I –

Accredited relies on the reasoning set forth in *Briggs v. Kent (In re Professional Investment Properties of America)*, 955 F.2d 623 (9th Cir. 1992) as authority for its assertion that debtor's schedules, statement of financial affairs and other official forms would place a prospective purchaser of the property on notice of the existence of the 2004 mortgage.

*In re Professional Investment* is not binding on this court; determining whether we should apply it here requires some discussion of the decision.

Briggs loaned a sum of money to Professional Investment in return for which it executed a promissory note and a deed of trust, both of which were never recorded. *Id.*, 955 F.2d at 624.

Thereafter, an involuntary bankruptcy petition was brought against Professional Investment. The Briggs were among the petitioning creditors.

In anticipation of a sale by the bankruptcy trustee of the property subject to their unrecorded deed of trust, Briggs sought to have an equitable lien in their favor imposed on the sale proceeds. *Id.* After an initial remand, the bankruptcy court granted summary judgment in favor of the trustee. Any notice of Briggs' interest, the bankruptcy court held,

came *too late* to place them in a position *vis-à-vis* the property which was superior to that of the trustee. The district court subsequently reversed, holding that language in the involuntary petition gave the trustee constructive notice of Briggs' interest in the property. *Id.* The trustee appealed the decision of the district court to the United States Court of Appeals for the Ninth Circuit.

The issue raised on appeal was whether the content of the involuntary petition brought, in part, by Briggs, placed the trustee on inquiry notice of their interest in the property arising from unrecorded documents. *Id.*

The trustee raised two arguments in his appeal. He first asserted that the information in the involuntary petition was not sufficient to put him on notice of Briggs' interest in the property. In addition, the trustee asserted that any information he acquired *after* the bankruptcy petition was filed could have no bearing on whether he qualified as a bona fide purchaser of the property as of the time of the commencement of the bankruptcy case. *Id.*, 955 F.2d at 628.

Without elaborating, the court of appeals agreed with the trustee's second assertion. A bona fide purchaser for purposes of § 544(a)(3) is a purchaser having no knowledge of a prior interest in property "at the instant the petition is filed". After so stating, the court of appeals then addressed the trustee's first assertion and considered the ramifications of "the petition itself". Id., 955 F.2d at 628 n.3.

There was "no practical reason", the court observed, why the trustee "should not be put on inquiry notice by the very petition that created his position". *Id*, 955 F.2d at 628. It stated that *the petition* itself:

> ... should have raised the trustee's suspicions and compelled him to inquire further. Since this was an involuntary petition, the trustee need only have contacted the Briggs to determine their specific interest. In fact, the trustee had a duty to inquire as to the nature of the Briggs' claim once he was appointed.

*Id.*, 955 F.2d at 629.

*Professional Investment* is not, however, "on all fours" with the present bankruptcy cases. Whereas *Professional Investment* involved an involuntary petition, the present bankruptcy cases involve voluntary petitions. The court of appeals indicated that resolution of the appeal depended on whether *the bankruptcy petition itself* placed the trustee on inquiry notice of the Briggs' interest in the property. *Id.*, 955 F.2d at 628 n.3. Its analysis did not take into consideration the debtor's schedules, statement of financial affairs or other official forms, all of which undoubtedly were not filed contemporaneously with the involuntary petition but at a later time.

The court of appeals concluded that the involuntary petition itself contained information that put the trustee in inquiry notice of the Briggs' interest in the property. In the space on the involuntary petition reserved for petitioning creditors to describe the nature of their claim, the Briggs indicated that their claim was secured by a deed of trust and indicated its amount. *Id.*, 955 F.2d at 628.

In contrast to the involuntary petition filed in *Professional Investment*, the voluntary petitions filed in debtors' respective bankruptcy cases contained no information that might place a bankruptcy trustee on notice that the 2004 mortgage was in effect at the time of the filing of the petition. A voluntary bankruptcy petition does not contain space, as does an involuntary petition, for describing the nature of creditors' claims against the bankruptcy estate.

Our analysis of *Professional Investment* does not end with this observation. The outcome of the appeal in *Professional Investment* depended on the unarticulated premise that information provided *at the time of the commencement of the bankruptcy case* may place a bankruptcy trustee, who is not appointed until later and who does not review the petition until after his or her appointment, on inquiry notice of the interest of a creditor in property listed on the schedules and statement of financial affairs.

We agree with this unexpressed principle. Provided that they are filed *contemporaneously* with a voluntary petition, information in a debtor's schedules, statement of financial affairs and statement of intention may provide a trustee for purposes of § 544(a)(3) with notice of the existence and nature of a creditor's claim "at the commencement of the case".

Under the law of Pennsylvania, a purchaser of real property without actual or constructive notice of a third party's claim with respect to the property takes it free of the claim of that party. *Lund v. Heinrich*, 410 Pa. 341, 346, 189 A.2d 581, 584 (1963)

A purchaser of real property must exercise ordinary diligence to qualify as a bona fide purchaser. Knowledge of every fact which "the exercise of ordinary diligence would have put him in possession" is imputed to that purchaser. *Fidelity-Philadelphia Trust Co. v. Lehigh Valley Coal Co.*, 294 Pa. 47, 58, 143 A. 474, 478 (1928).

Constructive knowledge in the present context consists of what a purchaser of debtors' property would have discovered from inspecting the public record in the office of the recorder of deeds as well as from inquiring of the person in possession of the property or of anyone else the purchaser has reason to believe has knowledge of facts which might affect title to the property. See *Sidle v. Kaufman*, 345 Pa. 549, 557, 29 A.2d 77, 81 (1942). A purchaser will not be adversely affected by facts which could not be discovered by inquiring, *Salvation Army v. Lawson*, 293 Pa. 459, 143 A. 113, 114 (1928).

To qualify as a bona fide purchaser under Pennsylvania law, a prospective purchaser has a duty to so inquire of one who is in possession of the property. A purchaser who fails to do is "affected" with constructive knowledge of any salient facts which might have been discovered had such inquiry been made. *Malamed v. Sedelsky*, 367 Pa. 353, 357, 80 A. 228, 234 (1951).

Had a hypothetical purchaser of debtors' property exercised ordinary diligence and conducted a search of the public record prior to the filing of debtor Paul Lauver's bankruptcy petition, that purchaser may have been led to believe that the property was not encumbered by the 2004 mortgage because it had been satisfied. Upon reviewing debtor Paul Lauver's schedules and the statement of intention, however, that hypothetical

purchaser would have learned of information that ought to have led it to wonder whether the 2004 mortgage was still in effect. Faced with such conflicting information, a hypothetical purchaser exercising ordinary diligence would be expected to make further inquiry concerning whether the property was encumbered by the 2004 mortgage. Such inquiry, we believe, would have revealed that the mortgage satisfaction was in error and that the property was still subject to the 2004 mortgage.

We conclude in light of these considerations that said purchaser of the property would *not* qualify as a bona fide purchaser of the property. The trustee in Paul Lauver's bankruptcy case consequently does not qualify as a bona fide purchaser for purposes of § 544(a)(3) and would not be in a position to avoid the 2004 mortgage for that reason.

What about the trustee in debtor Darla Lauver's bankruptcy case? Would the trustee be in the same position as the trustee in debtor Paul Lauver's bankruptcy case?

A key consideration in arriving at this conclusion in debtor Paul Lauver's case was that the trustee could not "step into the shoes" of a bona fide purchaser within the meaning of § 544(a)(3) because debtor Paul Lauver's schedules and the like were filed *contemporaneously* with his bankruptcy petition. This was critical in arriving at the conclusion that a hypothetical purchaser of the property would have constructive or inquiry notice at *the time of the commencement of debtor Paul Lauver's bankruptcy case* that the property might be subject to the 2004 mortgage.

A major difference in the two cases is that debtor Darla Lauver's schedules and statement of financial affairs were not filed at the time of the commencement of her

bankruptcy case; they instead were filed several weeks *after* the filing of her bankruptcy petition.

Because of this difference, we are not prepared at this time to conclude that the trustee in Darla Lauver's case could not "step into the shoes" of a bona fide purchaser of the property within the meaning of § 544(a)(3). Because of this difference, a hypothetical purchaser of the property may not be led to wonder *at the time of the commencement of Darla Lauver's bankruptcy case* whether the property might be subject to the 2004 mortgage after all and might not be expected to make inquiry concerning the status of the mortgage.[3]

– II –

Our analysis does not end with this last point. There is an independent basis for concluding that the trustees in both bankruptcy cases do not qualify as a bona fide purchaser of the property for purposes of § 544(a)(3).

Accredited asserts that examination of the recorded mortgage satisfaction piece and related documents in the public record reveals certain "anomalies" which would cause a prospective purchaser exercising ordinary diligence to have constructive notice that the mortgage satisfaction was erroneous and that the 2004 mortgage had not been satisfied.

One such "anomaly" Accredited points to is the discrepancy between the loan number referred to in the mortgage satisfaction piece and the loan number found on the

---

[3] We need not decide whether schedules and the like that are filed several weeks *after* the bankruptcy petition is filed would place one on notice as if they were filed contemporaneously with the bankruptcy petition. This issue need not be addressed to decide these adversary actions.

2004 mortgage. The mortgage satisfaction piece referred to the loan number on the unrecorded 2002 mortgage (0202048841) instead of the loan number found on the 2004 mortgage (0409171136). This, Accredited contends, would provide a prospective purchaser of the property with constructive notice that the 2004 mortgage had not been satisfied and remained in effect. We disagree with this conclusion.

This "anomaly" was pointed out at trial by Accredited's expert witness, who is an experienced attorney and highly sophisticated title searcher. In our estimation, this "anomaly" would require more than ordinary diligence for its significance to be discovered and appreciated by a prospective purchaser of the property and would cause that purchaser to inquire whether the 2004 mortgage in reality had been satisfied. Credible testimony was offered at trial by another title searcher that recognizing the significance of this "anomaly" would require *extra* ordinary skill and diligence.

We need not discuss each and every "anomaly" noted by Accredited's expert to decide these adversary actions. Accredited's expert testified that the major "anomaly" was the short interval of time between the granting of the 2004 mortgage in the amount of $132,000 on September 24, 2004, and the recording of the satisfaction piece less than five months later on February 18, 2005.

We agree that this particular "anomaly" ought to have caused a prospective purchaser of debtor's property exercising ordinary diligence to inquire of debtors whether the 2004 mortgage in reality had been satisfied in so short a period of time.[4] Had a prospective purchaser so inquired of debtors, they surely would have informed the prospective purchaser that the 2004 mortgage had not been satisfied. If the prospective purchaser failed to make such inquiry, it nonetheless would be charged with constructive notice that the mortgage had not been satisfied.

As a general matter, the duty to make such inquiry of one who is in possession of real property applies only to tenants in possession of the property. Such duty of inquiry normally does not arise when the person in possession of the property also is the title owner thereof. *Salvation Army*, 293 Pa. at 463, 143 A. at 114. Debtors were not merely in possession of the property; they were the record owners of it.

Despite this limitation on the scope of this principle, the facts presented in these adversary actions warrant its application and impose upon a prospective purchaser of the property exercising ordinary diligence a duty to inquire of debtors whether the 2004 mortgage was satisfied, as the mortgage satisfaction piece indicated. Had such inquiry been made, the prospective would have been informed by debtors that the 2004 mortgage had not been satisfied and that the property was still subject to the mortgage.

---

[4] This assumes that a prospective purchaser of the property would have reviewed the entire public record pertaining to the property and would have noticed the relatively short five-month interval between the recording of the mortgage and the recording of the mortgage satisfaction piece. A prospective purchaser who did not examine the public record or did not notice this short interval of time in our estimation would not have exercised ordinary diligence and for that reason alone would not qualify as a bona fide purchaser of the property.

We conclude in light of these considerations that a prospective purchaser of debtors' property would not qualify as a bona fide purchaser and that the trustees in both bankruptcy cases cannot avoid the 2004 mortgage in accordance with § 544(a)(3) and thereby prevent its reinstatement.

An appropriate order shall issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: **7/24/2007**

FILED

JUL 24 2007

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **PAUL P. LAUVER,** | : | Bankruptcy No. 05-35884 BM |
| | : | Adversary No. 06-2562 BM |
| **Debtor** | : | Chapter 7 |
| | : | |
| **DARLA M. LAUVER,** | : | Bankruptcy N0. 05-37622 BM |
| | : | Adversary No. 06-2563 BM |
| **Debtor** | : | Chapter 7 |

*********************************

| | | |
|---|---|---|
| **ACCREDITED HOME LENDERS, INC.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Complaints To Determine The |
| | : | Validity, Priority And Extent Of |
| **PAUL P. LAUVER, DARLA M. LAUVER,** | : | A Mortgage Lien |
| **JAMES R. WALSH, ESQ., TRUSTEE and** | : | |
| **ROBERT SHEARER, ESQ., TRUSTEE,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER OF COURT

**AND NOW**, this **24th** day of **July,** 2007, in light of the foregoing considerations, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that:

(1) **JUDGMENT** be and hereby is entered IN **FAVOR OF** plaintiff Accredited Home Lenders, Inc and **AGAINST** debtor Paul Lauver and debtor Darla Lauver.

(2) **JUDGMENT** be and hereby is entered **IN FAVOR OF** plaintiff Accredited Home Lenders, Inc. and **AGAINST** defendants James R. Walsh and Robert Shearer, trustees in the above-captioned bankruptcy cases. Said trustees **MAY NOT** avoid the mortgage lien of Accredited Home Lenders arising out of the 2004 mortgage in its favor.

(3) Plaintiff Accredited Home Lenders, Inc. is **GRANTED RELIEF FROM STAY** to take action in state court to have the mortgage satisfaction piece stricken from the record and to have the 2004 mortgage reinstated on the record.

It is **SO ORDERED**.

_____ 7-24-07
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm: Paul P. Lauver
Andrew M. Gross, Esquire
James R. Walsh, Esquire
David J. Novak, Esquire
Darla M. Lauver
James L. Cook, Esquire
Robert Shearer, Esquire
Owen W. Katz, Esquire
Mary F. Kennedy, Esquire
Scott M. Hare, Esquire
Office of United States Trustee

FILED

JUL 24 2007

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA